IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF DELAWARE

```
x-----------------------------x
                              :
                              :
   WEI TENG,                  :
                              :
        Plaintiff,            :   Civil Action No. 07-0028-***
                              :
   v.                         :
                              :
   PAUL NOVAK, et al.,        :
                              :
                              :
        Defendants.           :
                              :
x-----------------------------x
```

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I. <u>INTRODUCTORY STATEMENT</u>

This is an action in which the Plaintiff, Wei Teng, seeks an order compelling defendants to expedite her application to adjust status to lawful permanent residency. As set forth below, the case is uniquely inappropriate for judicial intervention.

By statute, adjustment of status is committed to the sound and unfettered discretion of the Secretary; neither the Immigration & Nationality Act ("the Act" or "the INA"), nor the applicable regulations specify a time frame within an application must be adjudicated; the Act expressly removes adjustment-of-status decisions from the orbit of judicial review; and, putting

1

the Act to one side, the discretionary nature of the process at hand renders mandamus and review under the Administrative Procedure Act ("APA") completely inappropriate.

Not surprisingly, therefore, a host of cases have dismissed suits such as the instant action for lack of jurisdiction.  Accordingly, for the reasons explained more fully below, the Government respectfully asks that this motion to dismiss be granted.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are straightforward.  She alleges that on or about October 22, 2004 she filed an application to adjust her status and become a permanent resident of the United States; that receipt was acknowledged by the United Stated Citizenship and & Immigration Service ("USCIS"); and that Plaintiff was advised on July 15, 2006, and again on November 9, 2006, that the adjudication of her application had been delayed because of the absence of the required security checks.  (Compl. ¶¶ 7-10.)

Based on the foregoing, Plaintiff advances several substantive causes of action. First,  seek relief under the APA, principally 5 U.S.C. § 706(1), which provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." (Compl. ¶ 12.)  Second, Plaintiff

petitions the Court to issue a writ of mandamus pursuant to 28 U.S.C. § 1361, compelling Defendants to adjudicate their application.

III. <u>THIS MOTION SHOULD BE GRANTED</u>

    A. <u>The Immigration & Nationality Act</u>

    We begin with the adjustment-of-status statute, Section 245(a) of the I.N.A., 8 U.S.C. §1255(a).  This provides, in terms, that the status of an alien who has been admitted or paroled into the United States "<u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ." (emphasis added).  Granting or denying the application is thus discretionary.  Significantly, neither the face of the statute nor the enabling regulations specify a time frame within which the Secretary must act on the application.  <u>Id</u>.; 8 C.F.R. Pt. 245.

    The process, in short, is quintessentially discretionary, and it is one which is removed from the ambit of judicial review by two subsections of 8 U.S.C. § 1252:

    (a) First, Section 1252(a)(2)(B)(i) provides that, notwithstanding any other provision of law, including the mandamus statutes, 28 U.S.C. §§ 1361 and 1651, "no court shall have jurisdiction to review any judgment regarding the granting

of relief under section . . . 1255 of this title, . . . ."[1]  In addition, Section 1252(a)(2)(B)(ii) expressly precludes judicial review of "any other <u>decision or action</u> of the . . . Secretary of Homeland Security the authority of which is specified under this subchapter to be <u>in the discretion</u> of the . . . Secretary of Homeland Security . . ." (emphasis added).  <u>See</u> <u>e.g.</u>, <u>Serrano v. Quarantillo</u>, No. 06-05221-DRD, 2007 WL 1101434, at *2-3 (D.N.J. Apr. 9, 2007) (discussing Section 1252(a)(2)(B) and granting motion to dismiss action seeking to compel adjudication of plaintiff's adjustment of status application); <u>Safadi v. Howard</u>, No. 1:06CV1055, 2006 WL 3780417, at *2-4 (E.D. Va. Dec. 20, 2006) (same); <u>Sharkey v. Ganter</u>, No. 05 Civ. 5577(PAC), 2006 WL 177156, at *2-4 (S.D.N.Y. Jan. 24, 2006)(same).

(b) Second, Section 1252(g) of Title 8 states that except as otherwise provided in that section, and again notwithstanding any other provision of law, including the mandamus statutes, 28 U.S.C. §§ 1361 and 1651, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders

---

[1] As amended by the REAL ID Act of 2005, H.R. 1268, 109th Cong. (2005)(enacted), Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("the R.I.D.A.").

against any aliens."[2]  In this regard, the case of <u>Gomez-Chavez v. Perryman</u>, 308 F.3d 796 (7th Cir. 2002) is directly on point.

There, the alien filed an I-130 petition for alien relative, an I-485 petition to adjust status, and an I-212 petition for leave to re-apply for admission after removal, <u>i.e.</u>, a waiver of inadmissibility.  He also commenced an action for a declaratory judgment and a writ of mandamus, asserting that the immigration service had improperly refused to adjudicate his I-212.

The Court of Appeals for the Seventh Circuit ruled, however, that petitioner's arguments "fit[] squarely within the steps covered by the prohibition on judicial review" set forth in Section 242(g) of the statute:

> Under § 1252(g), courts are barred from reviewing discretionary decisions to commence proceedings, adjudicate cases, or execute removal orders.

308 F.3d at 800, <u>citing</u> <u>Reno v. American-Arab Anti-Discrimination Comm</u>., 525 U.S. 471, 482 (1999).

The court of appeals noted further that these "strict limitations" apply not only to affirmative actions, but to refusals to act as well.  Thus, an alien attempting to seek judicial review of such "discretionary measures" cannot evade the

---

[2] As amended by the R.I.D.A.

bar of Section 242 "by the simple expedient of recharacterizing a claim as one challenging a refusal to act." 308 F.3d at 800; see also Castillo v. Ridge, 445 F.3d 1057, 1060 (8th Cir. 2006) (mandamus not available to compel action on request for Section 1182(h) waiver of inadmissibility); Li v. Agagan, No. 04-40705, 2006 WL 637903, at *3-4 (8th Cir. Mar. 14, 2006) (citing Section 1252(g), court denied petition for writ of mandamus to compel adjudication of adjustment of status application); Kailash v. Chertoff, No. 05-5494, 2006 WL 938523, at *1 (E.D. Pa. Apr. 10, 2006) (citing Section 1252(g), court declined to entertain cause of action for relief from denial of waiver of inadmissibility as predicate to adjustment of status), appeal pending (Third Circuit, No. 06-2373).

B. Mandamus and Administrative Procedure Act

Nonetheless, Plaintiff attempts to invoke the jurisdiction of the Court by citing to the mandamus statute, 28 U.S.C. § 1361, and the APA. The Government respectfully submits that the decision of the Supreme Court of the United States in Norton v. So. Utah Wilderness Alliance, 542 U.S. 55 (2004), disposes of both prongs of this jurisdictional allegation.

There, the Court addressed, inter alia, the language in 5 U.S.C. § 706(1) that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed," 542

6

U.S. at 62. The Court noted, with emphasis, that "the only agency action that can be compelled under the APA is action legally _required_. This limitation appears in § 706(1)'s authorization for courts to 'compel agency action _unlawfully withheld_'" 542 U.S. at 63 (emphasis original).

Further, the Court reasoned further that the APA simply extended the traditional practice, prior to its passage, of achieving judicial review through a writ of mandamus and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command,'" _id_., _quoting_ _ICC v. New York, N.H. & H.R. Co._, 287 U.S. 178, 204 (1932) and _citing_ _Kendall v. United States ex rel. Stokes_, 12 Pet. 524, 613 (1838) ("precise, definite act . . . about which [an official] had no discretion whatsoever"); _Vermont Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc_., 435 U.S. 519, 546 (1978) (§ 706[1] empowers a court only to compel an agency "to perform a ministerial or non-discretionary act").

The Court added that Section 706(1) also speaks of agency action which is "unreasonably delayed," 542 U.S. at 63 n.1, the essential allegation here. However, "a delay cannot be unreasonable with respect to action that is not required," _id_. Thus, a claim under Section 706(1) can go forward only "where a plaintiff asserts that an agency failed to take a _discrete_ agency

7

<_<

<.<

action that it is <u>required to take</u>," <u>id</u>. at 64 (emphasis original).  Nor, under the Court's rationale, could a writ of mandamus issue, absent such required agency action.  In short, the APA analysis and the mandamus analysis are one and the same.

<u>Norton</u> is directly on point.  Adjudication of an adjustment-of-status application is a manifestly discretionary task; neither the statute nor the applicable regulations specify a time frame with which the adjudication should take place; there is no "discrete agency action which it is required to take," 542 U.S. at 64; there is no action which has been "unlawfully withheld;" nor, therefore, can it be said that the agency's action has been "unreasonably delayed," 542 U.S. at 63 n.1.

Thus, it is not surprising that there is a significant body of authority, rejecting efforts, such as those of the Plaintiff here, to invoke the jurisdiction of the district courts over actions seeking to compel adjudication of adjustment of status applications.  These cases repeatedly reason that mandamus is inapplicable, precisely because of the discretionary nature of the process at issue, and that APA review is similarly inappropriate, <u>inter alia</u>, because the INA "preclude[s] judicial review," 5 U.S.C. § 701(a)(1), and because the A.P.A. expressly exempts "agency action . . . <u>committed to agency discretion by law</u>," 5 U.S.C. § 701(a)(2)(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Castillo</u>

v. Ridge, 445 F.3d 1057, 1060 (8th Cir. 2006) (mandamus inappropriate); Safadi, 2006 WL 3780417, at *2-4 (rejecting mandamus and APA allegations, citing, inter alia, 5 U.S.C. § 701(a)(2)); Keane v. Chertoff, 419 F. Supp. 2d 597, 601-02 (S.D.N.Y. 2006) (same, citing, inter alia, 5 U.S.C. § 701(a)(2)); Sharkey v. Ganter, No. 05 Civ. 5577(PAC), 2006 WL 177156, at *4-5 (S.D.N.Y. Jan. 24, 2006) (neither mandamus nor APA applicable, citing, inter alia, 5 U.S.C. § 701(a)(2)); Mustafa v. Pasquerell, No. SA05CA-658-XR, 2006 WL 488399, at *2-3 (W.D. Tex. Jan. 10, 2006) (rejecting mandamus and APA allegations and citing Norton); Karan v. McElroy, No. 02 Civ. 6678(JGK), 2003 WL 21209769, at *1-2 (S.D.N.Y. May 23, 2003) (rejecting mandamus and APA allegations); Zheng v. Reno, 166 F. Supp. 2d 875, 879-880 (S.D.N.Y. 2001) (judicial creation of duty to act on adjustment-of-status application within specified time frame, where none is prescribed by statute, "'would have potential for mischievous interference with the functioning of already overburdened administrative agencies,'", quoting Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978)); Rahman v. McElroy, 884 F. Supp. 782, 787-88 (S.D.N.Y. 1995) (mandamus does not lie to require immigration service to schedule adjustment-of-status interviews at specific time or in specific sequence); cf. Dridi v. Chertoff, 412 F. Supp. 2d 465, 468 (E.D. Pa. 2005) ("Courts that have ruled

on similar questions have consistently held that the actions of immigration authorities with respect to the timeliness of decisions on immigration petitions are discretionary not mandatory, and, therefore, not subject to a mandamus petition."); but see, e.g., Salehian v. Novak, No. 3:06cv459 (PCD), 2006 WL 3041109, at *3-4 (D. Conn. Oct. 23, 2006) (exercising mandamus jurisdiction to compel adjudication of adjustment-of-status application, but failing to cite Norton); Kim v. Ashcroft, 340 F. Supp. 2d 384, 391 (S.D.N.Y. 2004) (same, also not citing Norton).[3]

    The restraint exercised by the majority of the above cases is entirely appropriate, for reasons articulated in the recent decision in Manzoor v. Chertoff, 472 F. Supp. 2d 801 (E.D. Va. 2007), a closely analogous naturalization case. We emphasize that naturalization and adjustment of status are very different processes and that they implicate entirely different statutory frameworks. Nonetheless, Manzoor's cogent and thoughtful observations about judicial intervention in the application process pertain here as well and with equal force.

---

[3] See also Paunescu v. INS, 76 F. Supp. 2d 896, 901-03 (N.D. Ill. 1999) and Agbemaple v. INS, No. 97 C 8547, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998). In the wake of the Seventh Circuit's analysis in Gomez-Chavez, supra, however, the precedential value of North District of Illinois decisions in Paunescu and Agbemaple is questionable.

First, Manzoor observes that the courts are ill-equipped to conduct background checks of naturalization applicants. In some cases, follow-up inquiry by the FBI may be necessary, and once this process is competed, evaluation of the data assembled by the F.B.I., as well as any follow-up questioning of the applicant, are best left to the USCIS. Manzoor, 472 F. Supp. 2d at 808. The same can readily be said of adjustment-of-status applicants.

Moreover, Manzoor quite frankly, and we believe appropriately, notes that it has no desire to provide any incentive to applicants to commence litigation as a device for expediting the naturalization process. Id. at 808-09. It adds that the lawsuits such as the one before it (and the same is true of the instant action) "divert CIS's attention and resources away from the adjudication of naturalization applications." Id.

Thus, Manzoor concludes that it "has no desire to make the filing of a lawsuit a means for a naturalization applicant to 'jump to the front of the line,'" id. Such a result, while obviously addressing whatever injustice the plaintiff may have endured, only creates another injustice in its place, by forcing the applicant who did not file a lawsuit to wait even longer, while the litigation plaintiffs receive priority to which they have no intrinsic entitlement. Again, there is absolutely no

11

principled basis on which to distinguish between the naturalization applicant before the court in <u>Manzoor</u> and the adjustment-of-status applicant here.

Ultimately, the real underlying issue boils down to one of resources. As <u>Manzoor</u> notes, in fiscal year 2006, the F.B.I. processed more than 3.4 million name checks. <u>Id.</u> at 804. With an increase in support, the FBI could undoubtedly do better, but this is a budgetary issue which needs to be addressed at the legislative and executive levels, and not, we respectfully submit, by the judiciary. <u>See</u>, <u>e.g.</u>, <u>Mustafa</u>, 2006 WL 488399, at *5 ("'delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world,'" <u>quoting</u> <u>Alkenani v. Barrows</u>, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005)).

This is precisely the point with which the court concluded its opinion in <u>Safadi</u>:

> It is worth noting that plaintiff's frustration over the pace of the adjudication process is better addressed to the political branches which, as the Supreme Court has noted, have "the responsibility for regulating the relationship between the United States and our alien visitors."

2006 WL 3780417 at *4 n.7, <u>quoting</u> <u>Mathews v. Diaz</u>, 426 U.S. 67, 81 (1976).

12

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this motion be granted.

DATED:    April 16, 2007.

                                Respectfully Submitted,

                                COLM F. CONNOLLY
                                United States Attorney

                         By:    /s/ Seth M. Beausang
                                Seth M. Beausang (I.D. No. 4071)
                                Assistant United States Attorney
                                The Nemours Building
                                1007 Orange Street, Suit 700
                                Wilmington, DE 19801
                                (302) 573-6277

## CERTIFICATE OF SERVICE

I hereby certify this 16th day of April, 2007, that a copy of the foregoing Government's Motion to Dismiss, Memorandum in support therof, and Proposed Order was served by electronic filing on the following counsel of record for Plaintiff:

Kevin Harrison Grubb
Hogan & Vandenberg LLC
4 East 8th Street
Towne Center Building
Wilmington, DE 19801
(302) 225-2734


                                            /s/ Seth M. Beausang
                                  Assistant United States Attorney